Robert **MOLITOR**, Appellant,

v.

**AMERICAN PRESIDENT LINES, LTD.,**
Appellee.

**No. 19086.**

United States Court of Appeals
Ninth Circuit.
,March 30, 1965.

Jack H. Werchick, San Francisco, Cal., for appellant.

Graydon Staring, Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., for appellee.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge:

Robert Molitor brought this action against American President Lines to recover damages for personal injuries sustained while employed aboard the S.S. PRESIDENT HOOVER. Molitor, an unlicensed junior engineer, alleged that he was injured while threading pipe in the machine shop located in the engine room of that vessel. Asserting that the proximate cause of such injuries was the negligence attributable to defendant, and to the unseaworthiness of the S.S. PRESIDENT HOOVER, Molitor sought damages in the sum of $150,000.

The cause was tried without a jury and judgment was entered for defendant dismissing the action. Appealing to this court, Molitor questions the trial court holdings that defendant was not negligent, that the vessel was not unseaworthy, and that no negligence or unseaworthiness was the proximate cause of any injury to the seaman.

About February 25, 1960, a certain line of two-inch pipe was fabricated and installed in the vessel's engine room. The vessel's first assistant engineer assigned Molitor to thread certain pieces of pipe for this purpose. Molitor did so, using a pipe vise affixed to a work bench in the vessel's machine shop. He also used a pipe die of appropriate size, to-

gether with the ratchet handle provided for it. Molitor testified that while lifting the handle it struck him in the side of his thigh causing the injuries of which he complains.

Molitor begins his argument with the assertion that the district court " * * * made no findings of fact," stating that the "findings" which appear in the transcript were, upon the request of the court, prepared by counsel for the prevailing party. For this reason and because, in Molitor's view, the trial court terminated the trial prematurely precluding the production of relevant evidence, he urges us to " * * * weigh the evidence as introduced at trial as though this were an appeal from a summary judgment." Molitor then discusses the evidence bearing upon the issues of unseaworthiness and negligence as if these matters were before this court for *de novo* determination.

 The asserted premature termination of the trial will be discussed at a later point in this opinion. If this appeal involved review of a summary judgment we would have no function to "weigh the evidence," since under Rule 56(c), Federal Rules of Civil Procedure, no summary judgment may be entered if there is a genuine issue as to any material fact. Contrary to Molitor's assertion, the trial court made complete findings of fact. It is immaterial that counsel for the prevailing party, at the request of the court, prepared the findings.

 The only question concerning the facts of this case which this court may appropriately consider is whether any of the essential findings of fact are clearly erroneous. McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20. We shall consider Molitor's arguments concerning the facts of the case having in view this limited scope of our reviewing function. We shall also bear in mind that in determining whether any of the findings are clearly erroneous, due weight must be accorded to the trial court's appraisal of the credibility of the witnesses. Nuelsen v. Sorensen, 9 Cir., 293 F.2d 454, 460.

 Molitor argues that uncontroverted testimony establishes that the space in which he was required to perform this work was insufficient, and that the court should therefore have found that, for this reason, defendant was negligent or the vessel was unseaworthy.

Molitor testified that in using a pipe die with a ratchet handle to thread a pipe it is easier to push down on the handle than to lift up. But because of a pile of boxes and the presence of a bulkhead, Molitor stated, he could not use the extension of the ratchet handle when bearing down. The result was, according to his testimony, that he accomplished most of the threading by lifting up on the die handle. Elijah J. Bosserman, a marine surveyor, testified that the area in which the vise and other equipment was located " * * * is reasonably restricted to work in." He expressed the opinion that it would be quite difficult to thread any length of pipe over three or four feet in length due to the restriction of the machinist's vise in the immediate area.

Other testimony given by Molitor in a deposition which was read into the record put this area problem in a somewhat different light. Molitor there indicated that he could have accomplished the entire threading by pushing down on the ratchet and then pushing the ratchet around the pipe after each push, instead of going to the other side of the pipe and pulling up. He further testified, in his deposition, that pushing down eventually makes the shoulders tired, " * * * so you shift it and you could get more leverage when you pull up." Molitor also indicated in his deposition that the reason an extension of the ratchet handle could not be used for more than a notch at a time in the space provided, was because of the proximity of the deck to the vise located on a pedestal bench.

Considering this and other testimony bearing upon the space issue we hold that the implied finding of the district court that there was no negligence or unsea-

worthiness in this regard is not clearly erroneous.

■ Molitor also contends that uncontroverted testimony establishes that the work area in question was defective in respects other than size. Specifically, he asserts that a platform about the work bench was improperly designed. Molitor here relies upon the testimony of Bosserman to the effect that a wooden platform on the deck of the work room was defective because it ended at the end of the bench. Bosserman thought that, for this reason, the area was unsafe for this job because, with the roll or pitch of the vessel, a workman standing on the platform would probably lose his balance " * * * by twisting his foot from the edge of this wooden platform."

Molitor sustained injuries on February 25, 1960. Bosserman did not inspect the machine shop of the S.S. PRESIDENT HOOVER until August or September, 1963. Appellee states that there was no evidence that this was a condition existing in February, 1960, and that no testimony tended to connect such a platform with Molitor's claim of injury. In response to this, Molitor has not come forward with any record reference revealing such evidence, nor have we found any such evidence.

On the showing made we conclude that the implied finding that the machine shop was not defective in this respect on the date of the injury, is not clearly erroneous.

Molitor next urges that uncontroverted evidence establishes that the equipment provided for Molitor was aged and insufficient. The testimony relied upon to prove this pertains to the two-inch die and the ratchet.

Bosserman testified that the die was filled with cuttings and threading oil and rust spots. But Bosserman made his observations more than three and a half years after the injuries were sustained. Molitor testified, in his deposition, that the die did not have rust on it but did have "spots" which indicated that it had been in the rack a long time. Molitor

also stated that the cutting edge of a die becomes dull only with use. He saw no nicks on the die he used. Molitor testified at the time that whether the die handle is to be regarded as sufficient for the pipe he was ordered to cut " * * * depends on how strong you are." In his deposition he testified that there was nothing wrong with the handle.

The district court did not clearly err in impliedly finding on this and other relevant testimony that the equipment Molitor used on the occasion in question was not inadequate or defective.

Molitor contends that uncontroverted evidence establishes that the practice of providing assistants for the threading of two-inch pipe was not followed in this instance.

In his testimony, Molitor characterized the work of threading this pipe as "very heavy work," and he stated that he had asked for assistance. Bosserman testified that he would not order one man to cut a two-inch piece of pipe "(b)ecause it is too difficult. * * * I believe it was wrong to order one man to cut the pipe alone." On the other hand, Howard Henry, who was first assistant engineer on the S.S. PRESIDENT HOOVER on the date of the injury, testified that one man usually threads his own pipe, and that he had done so himself. Henry could not remember that he had ever used two men to pull on the handle in the course of such work and stated that Molitor had made no complaint about the work of threading the pipe.

In view of this testimony, the district court did not clearly err in impliedly finding that failure to utilize the services of two men on this pipe-cutting job did not constitute negligence.

■ Molitor argues that the court erred in failing to find that the job of threading the die should have been done on the lathe which he lacked the skill to operate.

Bosserman testified that the proper practice is to cut the threads of a two-inch pipe on a lathe. Henry testified that there was a lathe on the S.S. PRESI-

DENT HOOVER in such condition that it could have been used to thread the two-inch pipe. Henry also stated that in a shop on shore, plumbers cut two-inch pipe with a machine. Molitor testified that he was not permitted to use the lathe on the S.S. PRESIDENT HOOVER because he had not had instructions in the operation of the lathe on that vessel.

As indicated above, however, Henry testified that hand threading in the manner described could be done by one man, that he had done so himself, and that Molitor made no complaint when he was directed to do this work without assistance. Henry also testified that " * * * you wouldn't use a lathe for two-inch pipe * * * " because it would take too long to set it up in the lathe and the lathe on the vessel could not be used for long lengths of pipe.

It was the function of the district court to appraise the conflicting views of the two experts, Bosserman and Henry. See United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell, 9 Cir., 293 F.2d 816, 823. Having only the transcribed testimony before us we find no basis for holding that the court erred in accepting Henry's opinion.

■■ Molitor contends that the district court erred in finding that no unseaworthiness of the vessel or lack of care on the part of the company caused or contributed to any injury to him. The basis for this contention is that medical testimony was reserved and since some of it would have been relevant to the issue of proximate cause, no finding should have been made on that issue.

In the pretrial order it was provided that the issues of liability and damages should be tried together. After four non-medical witnesses, called by Molitor, had testified, appellant rested his case except for the testimony of Dr. Wagner, who was to be called the next day. Counsel for Molitor at no time informed the court that Dr. Wagner's testimony would have any bearing upon any issue other than damages. Counsel for the company then presented his case, except for medical testimony, indicating, however, that his medical testimony " * * * does go to liability causation, of course."

The court then requested counsel to argue the matter of liability before hearing the medical testimony. The court indicated, however, that if counsel desired to call their doctors first that would be done. Counsel for Molitor indicated that he would be glad to follow the court's suggestion, and counsel proceeded with their arguments on liability. Immediately afterwards, the court orally announced its decision in favor of the company on seaworthiness, negligence and proximate cause.

After this was done counsel for Molitor made no request that the testimony of his doctor be received, inquiring only whether the court wished him to call some plumbers to testify. The court did not accept this suggestion. The trial accordingly concluded without any doctors being called.

Counsel for Molitor, having made no objection to the determination of the liability issues without first receiving his medical testimony, is not now in a position to complain because this was done. See, Adams v. United States, 9 Cir., 318 F.2d 861, 865. In any event, since the trial court's finding that the vessel was not unseaworthy, and its owner was not negligent, is not clearly erroneous, Molitor was not aggrieved by the court's further finding that no unseaworthiness or negligence was a proximate cause of his injuries.

Throughout Molitor's briefs on appeal he makes frequent reference to Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20, asserting that this decision is determinative of this appeal.

■■ In that case the Supreme Court stated the rule, which we fully recognize, that under the doctrine of unseaworthiness, the vessel's duty to furnish seamen with tools reasonably fit for their intended use is absolute. The court there held that the evidence received in that case was sufficient to present a jury question

as to whether the tool involved in that case, a wrench, was reasonably fit for the use the seaman was required to make of it. Since the trial court took that question from the jury and directed a verdict for the defendant, this action being affirmed by the court of appeals, the Supreme Court reversed.

In our case the trial judge was the fact finder. In that capacity he found, in effect, that the devices with which Molitor was required to work were reasonably fit for that use. There being no jury, no question was taken from the jury. A holding in Michalic that evidence introduced in that case was sufficient to take the issue of unseaworthiness to the fact finder (there a jury), has no tendency to establish that, under the wholly different evidence in this case, the fact finder's determination that the vessel was seaworthy is clearly erroneous.

The judgment is affirmed.